WEIMER, Justice.[1]
I,The threshold legal issue in this case is whether persons who are neither business competitors nor consumers can bring an action for damages pursuant to the Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq. (LUTPA). Finding no such limiting language in the statute, we hold the dismissal of plaintiffs’ LUTPA claim against Shell Deepwater Production, Inc. (Shell) by the district court on the basis of this procedural requirement was error. Nevertheless, we find the appellate court’s reversal of summary judgment dismissing plaintiffs’ LUTPA claim was inappropriate because plaintiffs failed to produce evidence of a material factual dispute regarding Shell’s alleged use of an “unfair or deceptive method, act or practice” in its dealings with plaintiffs.
Thus, we reverse the appellate court judgment and render judgment dismissing claimant’s claims.
¡¡.FACTS AND PROCEDURAL BACKGROUND
Plaintiffs, Cheramie Services, Inc. (Cheramie Services) and its sole owner, Attecia Cheramie, filed suit in 1999 against Shell and Filco International, Inc. (Filco) asserting several causes of action[2] for damages allegedly sustained due to wrongful acts by and between the two defendants. The events leading to the filing of the petition are as follows.
Cheramie Services was one of several businesses that provided services to the oil industry, especially support personnel for offshore activities; these businesses bid on jobs for specific platforms. After submitting a successful bid to Shell, Cheramie Services first supplied clerks to Shell’s “Auger” tension-leg platform (Auger TLP) in the Gulf of Mexico in 1996. In August 1997, Cheramie Services entered into a written contract with Shell “to furnish all tools, equipment, materials, labor and supervision in order to provide the furnishing of clerical support for buyer.” Thereafter, Cheramie Services placed two clerks on the Auger TLP, Kenneth K. Ward and Kevin W. Kays, who each worked fourteen-day shifts. They alternated their shifts so that one of them was always on the platform. The procedure was that Shell paid Cheramie Services, and Chera-mie Services in turn paid Ward and Kays *1055 $13.00 per hour, with no benefits for vacation, retirement, or insurance. Cheramie Services made no deductions for income tax or social security taxes.
Approximately six months later, Shell stopped paying Cheramie Services and began paying Filco for services provided by Ward and Kays. In support of a motion for summary judgment filed by Shell, Ward and Kays signed affidavits which attested |sto the fact that they voluntarily quit Cheramie Services and went to work for its competitor, Filco. The plaintiffs allege in their petition that Shell’s actions constituted a wrongful termination of the contract and a breach of contract in January of 1998.
Although plaintiffs also allege collusion on the part of Shell and Filco regarding a Cheramie Services worker by the name of Mary Perez, Shell introduced the deposition testimony of Ms. Cheramie that is at odds with this allegation. Shortly after Ward and Kays switched parent companies (late 1997 to early 1998), according to Ms. Cheramie’s testimony, she called Shell which had a need for a logistics coordinator aboard the Ursa TLP. Ms. Cheramie met with a Shell representative and submitted a bid to provide workers for the Ursa TLP and provided the resume of Mary Perez, who had worked for Chera-mie on a recent project known as the “Ram Powell” job, which had been completed. Thereafter, Perez was sent by Ms. Cheramie to One Shell Square in New Orleans to be interviewed for the position by Shell employees. Perez attested she was told that if she wanted the position she would have to work for Filco, apparently because Filco, not Cheramie Services, had submitted the successful bid. Because Perez needed the job, she chose to leave the plaintiffs’ employ and work for Filco.
Shell answered the suit timely, but Filco failed to file an answer. The plaintiffs obtained a default which was confirmed by judgment on September 5, 2000. On May 2, 2001, Filco paid plaintiffs a settlement sum for dismissal of their suit against Fil-co.
In 2007, after the trial court granted Shell’s motion for summary judgment and dismissed plaintiffs’ claim in its entirety, plaintiffs appealed. They specifically argued the trial court erred in granting the motion for summary judgment finding that there was no breach of contract and that LUTPA did not apply.
|4The court of appeal affirmed the trial court’s finding that there was no breach of contract, and plaintiffs have not challenged that holding. Thus, the breach of contract issue is not before this court.
However, the court of appeal reinstated plaintiffs’ LUTPA claim. Without addressing whether the language of LUTPA limits the availability of a cause of action to consumers and business competitors, the court cited jurisprudence which allows a plaintiff to claim damages when one party conspires with a business competitor to commit unfair trade practices. The court held that the plaintiffs in the instant case made a prima facie showing that Shell conspired with Filco to injure plaintiffs, which brings their action within the ambit of LUTPA. One member of the panel concurred, noting that the range of prohibited practices under LUTPA is narrow, but concluding that Shell’s conduct was “so unscrupulous and egregious” that reversal of the summary judgment was appropriate. Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 07-1231 (La.App. 4 Cir. 3/4/09), 14 So.3d 1, writ granted, ((La.11/20/09), 25 So.3d 809).
DISCUSSION

Standing to Assert a LUTPA Claim:

As previously mentioned, the threshold legal issue in this case is wheth *1056 er plaintiffs have standing to bring a claim for damages pursuant to LUTPA. Noting that plaintiffs are neither business competitors of Shell nor consumers, facts that plaintiffs concede, Shell has urged a lack of standing. The issue is one of first | r,impression with this court. Although we have denied writs as early as 1982 in cases[3] that have rendered contradictory holdings, we have never addressed the conflict.
At issue is an evaluation of LSA-R.S. 51:1401, et seq., Louisiana’s Unfair Trade Practices and Consumer Protection Law enacted in 1972 as part of Title 51 entitled “Trade and Commerce.”[4] We begin as we must with the words of the statute. Grant v. Grace, 03-2021, p. 4 (La.4/14/04), 870 So.2d 1011, 1014.
The legislation specifies that “[ujnfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” LSA-R.S. 51:1405(A).
Entitled “Private actions,” LSA-R.S. 51:1409 provides, in pertinent part:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.
l6The definition portion of LUTPA is found in LSA-R.S. 51:1402 which provides, in pertinent part:
(1) “Consumer” means any person who uses, purchases, or leases goods or services.
[[Image here]]
(3) “Consumer transaction” means any transaction involving trade or commerce to a natural person, the subject of *1057 which transaction is primarily intended for personal, family, or household use.
[[Image here]]
(8) “Person” means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity.
(9) “Trade” or “commerce” means the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.
An examination of these sections of LUTPA reveals that the legislation contains no language that would clearly and expressly bar a “person” (such as the individual and the corporation that are the plaintiffs herein) from bringing an action for unfair trade practices. To the contrary, LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person’s use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members. As noted in Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc., 98-1514, pp. 12-13 (La.App. 1 Cir. 12/10/98), 725 So.2d 523, 530, Louisiana courts have repeatedly held that there is no such limitation in LUTPA.[5]
17An evaluation of the words of this statute leads to the conclusion that, consistent with the definition and usage of the word “person,” there is no such limitation on those who may assert a LUTPA cause of action. Any such limitation that has found its way into the jurisprudence resulted without proper analysis of the statute. See Gil v. Metal Service Corp.,[6] 412 So.2d 706, (La.App. 4 Cir.), writ denied, 414 So.2d 379 (La.1982). In Hamilton v. Business Partners, Inc., 938 F.Supp. 370 (E.D.La.1996), the Court discussed contrary holdings in cases, both state and federal, that have held relief under LUT-PA is limited to business competitors and consumers. Despite an acknowledgment in Hamilton that the seminal Louisiana case upon which subsequent jurisprudence relied could well be flawed, the limitation has been perpetuated in both state appellate courts and the federal courts interpreting Louisiana law.[7]
*1058 Based on the language of the statute, which does not contain a clear, unequivocal and affirmative expression that the private right of action provided in LSA-R.S. 51:1409(A) extends only to business competitors and consumers, LUTPA does not exclude other persons who assert a “loss of money or ... property ... as a |sresult of the use or employment by another person of an unfair or deceptive method, act, or practice.” Contrary holdings are hereby repudiated, because any limitation must be contained in the language of the statute.
We note the legislature, in enacting LUTPA in 1972, has provided certain limiting features. Although a plaintiff who obtains a judgment for damages pursuant to LSA-R.S. 51:1409(A) is entitled to an award for attorney fees and costs, LSA-R.S. 51:1409(A) also provides that if the plaintiff is unsuccessful and the court finds that the action “was groundless and brought in bad faith or for purposes of harassment,” the defendant may be awarded attorney fees and costs. Further, the treble damages that a plaintiff may be entitled to are conditioned on a finding by the court of an “unfair or deceptive method, act, or practice [that] was knowingly used, after being put on notice by the attorney general.” LSA-R.S. 51:1409(A); see Faris v. Model’s Guild, 297 So.2d 536 (La.App. 4 Cir.1974), writ denied, 302 So.2d 15 (Plaintiff could not recover treble damages where defendant company was never placed on notice of any act, conduct or practice prohibited by statute or by any rule or regulation made by the State.).
Although LUTPA is available to plaintiffs other than business competitors and consumers, a plaintiffs burden of proving an unfair or deceptive method, act, or practice on the part of a defendant is not lessened by this opinion.

Defendant’s Motion for Summary Judgment:

We turn now to a consideration of defendant’s motion for summary judgment, which was granted by the trial court and reversed by the appellate court.
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to | ¡Judgment as a matter of law.” LSA-C.C.P. art. 966(B). This article was amended in 1996 to provide that “summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action,.... The procedure is favored and shall be construed to accomplish these ends.” LSA-C.C.P. art. 966(A)(2). In 1997, the legislature enacted LSA-C.C.P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual *1059 support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. [Emphasis supplied.]
This amendment, which closely parallels the language of Rule 56(C) of the Federal Rules of Civil Procedure interpreted in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (in this case the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the parties who bear the burden of persuasion at trial (in this case the plaintiffs) must come forth with evidence (affidavits or discovery responses) which demonstrates they will be able to meet the burden at trial. See Racine v. Moon’s Towing, 01-2837, p. 5 (La.5/14/02), 817 So.2d 21, 25, citing 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce |inevidence of a material factual dispute mandates the granting of the motion. Hardy v. Bowie, 98-2821, p. 6 (La.9/8/99), 744 So.2d 606, 610. A fact is “material” when its existence or nonexistence may be essential to plaintiff’s cause of action under the applicable theory of recovery. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751; Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Id. This court has noted that a “material fact” is a fact, the existence or non-existence of which may be essential to plaintiffs cause of action under the applicable theory of recovery. Kennedy v. Sheriff of East Baton Rouge, 05-1418, p. 26 (La.7/10/06), 935 So.2d 669, 687, citing Champagne v. Ward, 03-3211, p. 5 (La 1/19/05), 893 So.2d 773, 777.
The applicable theory of recovery before this court is provided in LUTPA. Louisiana Revised Statutes § 51:1405(A) prohibits any “unfair or deceptive acts or practices in the conduct of any trade or commerce,” and § 51:1409(A) grants a right of action to “[a]ny person who suffers any ascertainable loss” from a violation of this prohibition. It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute’s prohibition. Dufau v. Creole Engineering, Inc., 465 So.2d 752, 758 (La.App. 5 Cir.), writ denied, 468 So.2d 1207 (La.1985) (In order to recover under LUTPA a plaintiff must prove “some element of fraud, misrepresentation, deception, or other unethical conduct” on the part of the defendant.).
The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct “offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.” Moore v. Goodyear Tire & Rubber Company, 364 So.2d 630, 633 (La.App. 2 Cir.1978) (Applying common meanings to the words of the statute, the court held a debtor had a right of action under LUTPA to recover actual damages for wrongful repossession of movables.); see also Lilawanti Enterprises, Inc. v. Walden Book Company, Inc., 95-2048 p. 6, 670 So.2d 558, 561 (Conclusory allegation by prospective subtenant of unethical, oppressive, unscrupulous or substantially injurious conduct on the part to a landlord were not supported by the record and did not controvert landlord’s affidavits that *1060 showed economic reasons for not accepting sublease.); Bolanos v. Madary, 609 So.2d 972, 977 (La.App. 4 Cir.1992), writ denied, 615 So.2d 339 (La.1993) (Defendant’s letters to government agencies did not fall to level of unethical, oppressive, unscrupulous, or substantially injurious practice and thus, did not constitute unfair trade practice.).
As noted in the concurrence in the instant case, Cheramie Services, Inc., 07-1231 at 1, 14 So.3d at 6, the range of prohibited practices under LUTPA is extremely narrow. In Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir.1993), the court explained:
LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes. [Citations omitted.]
Furthermore, at-will employees are free to exercise their right to change employment, even if they decide to work for a competitor of their former employer. Jones v. Ernst & Ernst, 172 La. 406, 134 So. 375 (1931); see also, Marine Forwarding & Shipping Co. v. Barone, 154 So.2d 528 (La.App. 4 Cir.1963) (The Inspirit of free labor permits every person to better his condition if he can lawfully do so.), cited in “Liability for inducing employee not engaged for definite term to move to competitor,” 24 A.L.R.3d 821, § 3. A corollary to this principle is the general rule denying the liability of competitors who lure away at-will employees, in the absence of a showing that the competitor had an unlawful or improper purpose or used unlawful or improper means. Id.; American Buildings Company v. Pascoe Building Systems, Inc., 260 Ga. 346, 348-349, 392 S.E.2d 860, 863 (1990); Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 403, 337 S.E.2d 744, 748 (1985). The courts are concerned not only with the interests of competing employers, but also with the employee’s interests; the interests of the employee in his own mobility and betterment are deemed paramount to the competitive interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change. Diodes, Inc. v. Franzen, 260 Cal.App.2d 244, 255, 67 Cal.Rptr. 19 (1968). Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.
Plaintiffs’ petition states the following allegations pertinent to the issue before this court, i.e., claimed violations of LUT-PA:
Commencing ... about January 20, 1998, the defendants, Shell and Filco, conceived and implemented a plan to enhance their respective businesses and competition positions over the petitioners by misappropriating, stealing and luring the petitioners’ employees away from the petitioners....
[[Image here]]
The actions of both the defendants, Shell and Filco, were taken for the purpose of soliciting and diverting, to their own benefit, the employees of Cheramie Services, Inc. and to deprive Cheramie Services, Inc. of its business, all in violation of the Louisiana Unfair Trade Prac *1061 tices Act, Louisiana Revised Statutes 51:1401 et seq.
|1sIn the instant case, we find Shell pointed out to the court that there was an absence of factual support for an essential element of plaintiffs cause of action under LUTPA, because plaintiffs were unable to show any collusion between Shell and Filco to “steal” plaintiffs’ employees (Ward, Kays, and Perez) as plaintiffs alleged. In support of its motion for summary judgment, Shell produced the deposition testimony of Frank Mihlon, Daniel J. Miessner, and Ms. Cheramie and the affidavits of Ward and Kays. An examination of those exhibits reveals that Shell was not involved with the eventual employment of the former Cheramie Services employees by Fil-co. The record is clear that Ward, Kays, and Perez were never employees of Shell; that Shell was unaware Ward and Kays had switched companies until after they became employees of Filco; and that Perez’s employment with Filco derived from the fact that Filco, not Cheramie Services, was the successful bidder for the Ursa TLP position.
Mihlon was Shell’s “asset leader” aboard the Auger TLP from April 1997 through January 2002. In that position, Mihlon was responsible for all activities at that location, including drilling, producing, and construction activities. He testified that the knowledge he had of the persons who worked offshore was limited to knowing to whom they reported aboard the Auger TLP, but he would not necessarily know for what company the individuals worked. Mihlon did not know Ward and Kays other than to say “Hello” and to know what their duties were. At some time he became aware that the two clerks were displeased with their parent contractor because they were not receiving benefits: medical insurance, chiefly, as well as vacation allowances and overtime pay. Mihlon learned they had approached their immediate supervisor, Dan Miessner, and asked if it would be a problem for Shell if they were to go to work for another parent contractor. Miessner, in turn, asked Mihlon; it was |unot a problem with either of those Shell supervisors. When Mihlon was asked if he was aware of any actions taken by Shell to influence Ward and Kays to leave Cheramie and work for Filco, he answered: “I’m not aware of any reason why anyone at Shell would have any interest ... with respect to why those individuals would work for one company or another.”
In his deposition, Miessner testified he was Shell’s logistic team leader for the Auger TLP and that Ward and Kays were already working there when he assumed that position. Miessner was not involved in procuring Shell’s contract with Chera-mie Services and never saw the written contract. He had no contact with Ms. Cheramie until after Ward and Kays switched companies, and then it was only by phone calls she made to him in an effort to solicit his aid in getting the two clerks to return to employment by Cheramie Services. Miessner was the supervisor who signed the time sheets turned in by the two clerks. He did not know anyone at Cheramie Services other than those two clerks and he knew no one at Filco. The first time Miessner became aware of the two men switching companies was when they turned in Filco time sheets instead of Cheramie time sheets.
In his affidavit, Ward explained how he left Cheramie’s employ and started work with Filco. His last shift on the Auger TLP while working for Cheramie ended on December 23, 1997; the next shift was scheduled to begin on January 6, 1998. During his time off, Ward called Filco’s field superintendent at Filco’s Lafayette office to confirm the pay and benefits. He *1062 sent a resume to Filco and then went to Lafayette to complete an employment application and to take a physical and other pre-employment tests. On January 5, 1998, Filco offered Ward employment as a logistics clerk and he accepted. Thereafter, Ward told Dan Miessner, Shell’s drilling foreman on the Auger TLP, that he was going to work for Filco and that he would hjjike to remain on the Auger TLP. Ward attested that before he talked to Miessner, he had decided to work for Fil-co, in order to receive better pay and benefits not provided by Cheramie, even if it meant he could not retain the spot on the Auger TLP.
The affidavit of Kays was similar. He, too, stated he was already determined to leave Cheramie’s employ before he talked to Miessner. During his off hours on the Auger TLP, Kays called a Filco employee and inquired about the pay and the benefits that company was providing. On his next fourteen days off, Kays went to Lafayette, interviewed for the job, and was hired by Filco. Thereafter, he notified Cheramie that he was leaving and going with Filco. He began earning about $10,000 more annually with Filco than he had made with Cheramie. Kays attested that no one from either Shell or Filco enticed, encouraged, or lured him to leave Cheramie and to work for Filco.
Additionally, Shell introduced the deposition testimony of Ms. Cheramie in which she explained the relationship between her company and Perez. Ms. Cheramie admitted she initiated the process of bidding on an opening for a logistics coordinator on the Ursa TLP. Thus, it would be error to state that Shell called Cheramie Services about sending a worker to apply for the position. Ms. Cheramie testified she sent Perez to interview for the Ursa TLP position after Cheramie Services submitted a bid to Shell. It is clear from our review of the record that it was Cheramie Services’ failure to submit the successful bid for the Ursa TLP opening, and not any action by Shell, that resulted in Perez leaving her employ with Cheramie Services. Ultimately, it was Perez’s decision to apply with Filco, which had prevailed in its bid for the Ursa TLP position. In sum, Perez exercised her freedom as an at will employee to go to work for Filco, as Ward and Kays had done earlier.
|, (¡After Shell filed its evidence in support of its motion for summary judgment, the burden shifted to plaintiffs to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial. “When a motion for summary judgment is made and supported ..., an adverse party may not rest on the mere allegations ... of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” LSA-C.C.P. art. 967(B). Plaintiffs did not produce any factual support for their contentions that the former Cheramie employees’ leaving their employ to become Filco employees was because of collusion between Filco and Shell. The affidavit of Ms. Cheramie merely reiterated the conclusory allegations of plaintiffs’ petition; affidavits with conclusory allegations of fact which are devoid of specific facts are not sufficient to defeat summary judgment. Id.; National Gypsum Company v. Ace Wholesale, Inc., 96-215, p. 6 (La.App. 5 Cir. 11/26/96); 685 So.2d 306, 309, writ denied, 96-3055 (La.2/7/97), 688 So.2d 502. The affidavit of Perez does not contain any facts that prove Shell personnel conspired with Filco personnel to lure her away from Cheramie Services. According to Ms. Cheramie’s admissions in her deposition introduced into the record by Shell, she was the party who initiated negotiations between her *1063 company and Shell for the position on the Ursa TLP, not vice versa.
In sum, plaintiffs’ response to Shell’s evidence fails to refute the affidavits by Ward and Kays and Ms. Cheramie’s deposition testimony, showing that the three workers were merely exercising their prerogatives as at-will employees[8] to change the companies for which they worked. Plaintiffs failed to produce any evidence of actions by Shell which would be tantamount to “unfair or deceptive acts or practices” |17in the conduct of their offshore operations. Plaintiffs’ inadequate response to Shell’s evidence made summary judgment appropriate. Id.
After considering a line of cases dealing with conspiracy, the court of appeal found that “plaintiffs made a prima facie showing that Shell conspired with Filco to injure plaintiffs, bringing their action within the ambit of LUTPA.” Cheramie, 07-1231 at 9, 14 So.3d at 6. We disagree. The appellate court’s conclusion is not supported by the record and is mere speculation that there was a conspiracy between the two defendants. Once defendant supported its motion for summary judgment with the affidavits of Ward and Kays, the deposition testimony of Ms. Cheramie regarding Perez, and the deposition testimony of two Shell supervisors, all of which negated allegations of a conspiracy between Shell and Filco, plaintiffs were required to produce evidence to refute defendant’s evidence. As the party adverse to the granting of the summary judgment, plaintiffs were required to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial of a conspiracy between the two defendants. LSA-C.C.P. art. 966(C)(2); see Dejoie v. Medley, 08-2223, p. 10 (La.5/5/09), 9 So.3d 826, 832. Plaintiffs’ evidence falls far short of the factual support required to establish that plaintiffs would be able to satisfy their evidentiary burden of proof at trial.
Accordingly, we hold that the court of appeal erred in reversing the trial court’s grant of summary judgment dismissing plaintiffs’ LUTPA claim.
JUDGMENT REVERSED; JUDGMENT RENDERED DISMISSING PLAINTIFFS’ PETITION.
JOHNSON and GUIDRY, JJ., concurred and assigned reasons.
KNOLL, J., concurred in result only.

. Kimball, C.J., did not participate in the deliberation of this opinion.

. The trial court's judgment dated April 17, 2007, dismissed the plaintiffs’ claims against Shell for "misappropriation of trade secrets, intentional infliction of emotional distress, unfair trade practices, conspiracy, discrimination, and violation of civil rights" and preter-mitted decision on the breach of contract claim. By another judgment dated May 22, 2007, the trial court dismissed the breach of contract claim.

. Compare Gil v. Metal Service Corporation, 412 So.2d 706 (La.App. 4 Cir.), writ denied, 414 So.2d 379 (La.1982) (holding only consumers and business competitors have standing) with Jarrell v. Carter, 577 So.2d 120, 123-124 (La.App. 1 Cir.), writ denied, 582 So.2d 1311 (La.1991) (holding that plaintiff who was not a consumer or a business competitor of defendant had standing).

. In an effort to be thorough, we reviewed the legislative history of this enactment. However, our review of the legislative history proved inconclusive. Nevertheless, when the words of a statute are clear and unambiguous, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. LSA-R.S. 1:4.
As the court of appeal in the instant case noted, this 1972 legislation was modeled after the Federal Trade Commission Act of 1914 (FTC). In the 1950s, state legislatures began adopting “little FTCs” in an effort to supplement the FTC in areas where the federal agency did not have the resources to enforce the federal act. See Keith E. Andrews, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 Loy. L.Rev. 759 (Winter 1996). Although the FTC creates no private right of action, most states included a private right of action as part of their "little FTCs.” Id. The crucial issue in the instant case is the nature of the private right of action provided by LUTPA.

. Belle Pass Terminal, Inc. v. Jolin, Inc., 618 So.2d 1076, 1081 (La.App. 1 Cir.), writ denied, 626 So.2d 1172 (La.1993); Jarrell v. Carter, 577 So.2d 120, 123-124 (La.App. 1 Cir.), writ denied, 582 So.2d 1311 (La.1991); Roustabouts, Inc. v. Hamer, 447 So.2d 543, 548 (La.App. 1 Cir.1984); Monroe Medical Clinic, Inc. v. Hospital Corporation of America, 622 So.2d 760, 763 (La.App. 2 Cir.), writ denied, 629 So.2d 1135 (La.1993); Lilawanti Enterprises, Inc. v. Walden Book Company, Inc., 95-2048, p. 6 (La.App. 4 Cir. 2/29/96), 670 So.2d 558, 561 ("Any person who suffers damage as a result of an unfair or deceptive act or practice which is unlawful under § 1405 has a private cause of action.”).

. Gil, 412 So.2d at 707, stated: "[T]his statute has been construed to give protection only to consumers and business competitors.” The court cited only National Oil Service of Louisiana v. Brown, 381 So.2d 1269 (La.App. 4 Cir.1980), and Reed v. Allison & Perrone, 376 So.2d 1067 (La.App. 4 Cir.1979), both of which involved plaintiffs seeking injunctions and neither of which addressed the issue of a limitation of the private right of action under LUTPA.

. In Delta Truck & Tractor v. J.I. Case Co., 975 F.2d 1192, 1205 (5 Cir.1992), the court followed the interpretation given by some Louisiana circuit courts and held that the private cause of action was limited to consumers and business competitors. Four years later the *1058 federal appellate court acknowledged that the split in the Louisiana circuit court decisions made its prior position debatable. Nevertheless, finding no subsequent decisions of the courts of Louisiana demonstrated that decísion was clearly wrong, the federal court again held there was no private cause of action for the plaintiffs under LUTPA. Gardes Directional Drilling v. U.S. Turnkey Exploration Co., 98 F.3d 860, 868 (5 Cir.1996).

. We assume that Ward, Kays, and Perez were employees of the plaintiffs because that assumption enhances the plaintiffs’ argument. However, the record is unclear whether they were employees or independent contractors.