CONERY, J.,
dissents and assigns reasons.
1,1 respectfully dissent.
When family members fight' over management of a closely held family corporation, nobody wins. Sam Broussard, Sr. started a trucking company known as Sam Broussard Trucking Company, Tnc. (SBT). When he died,, each of his four children inherited twenty-five percent of the stock in this .closely held family corporation. Sam Broussard, Jr. became president and manager of SBT. .Apparently, he successfully managed SBT and increased its earnings. Eventually, he felt that he was not being, properly compensated for the amount of time and, effort that he was putting into. SBT. He proposed that his sisters sell him fifteen percent of their shares such that he would own a seventy percent interest in SBT. They agreed, but Mr. Broussard eventually had SBT purchase the shares as “treasury stock.” In effect, instead of dividing the net profits or dividends' on a twenty-five percent basis, Mr. Broussard had SBT use what could have been some potential dividends to have SBT buy his sisters’ shares as treasury stock, thus increasing his interest to seventy percent of the outstanding shares. Mr. Broussard then began to increase his executive compensation, allegedly without notice to his sisters. ■
| beginning in 2004, after acquiring seventy percent of SBT’s stock in 2003, which would have entitled him to receive seventy percent of SBT’s net profits, Mr. Brous-sard unilaterally, and without his sisters’ knowledge or agreement, began to substantially increase his executive compensation through increased salaries and bonuses.
'■ In 2004, SBT paid Mr. Broussard approximately $450,000, which he increased to approximately $675,000 in 2005. In 2006, he paid himself in salaries and bonuses approximately $1.8 million and in 2007 and 2008 approximately $1.15 million. He paid himself $680,000 in 2009 and $1.1 million in 2010, In 2011, the year in which his- sisters finally demanded to see SBT’s financial records, Mr. Broussard paid himself in salary and'bonuses approximately $1.5 million, plus a $210,000 distribution as a shareholder and a Director’s fee of $6,000. ■
One of his sisters, Michelle Cart, worked with Mr. Broussard at SBT and ’ at one point alerted her two siblings, Ms. Guillory and Ms. Lopresto, that perhaps they should look at the financial records of SBT. When they asked to do so, Mr. Broussard' became very defensive ' and threatened to remove all of them from the SBT Board of Directors (Board) and threatened to terminate his sister, Ms. Cart. Allegedly, when he had initially proposed that he have seventy percent of the stock, he had promised that as a condition of the transfer of majority control to him, he would maintain each of them on the Board and continue paying “Director’s fees.” Moreover, they would maintain ownership of .the real estate and improvements from which SBT operated and SBT would continue to pay them each twenty-five percent of the monthly rentals for SBT’s use of the property and improvements, ■ After Mr. Broussard threatened *499 to remove his sisters from the Board, for the first time he took the position that SBT owned the real estate and | ^buildings and would no longer pay rent to his sisters.
After receiving the threatening e-mails, Ms. Cart withdrew her demand and agreed to remain employed at SBT. Mr. Broussard then sent her: an e-mail congratulating her on her decision, allowed her to remain employed and on the Board, and told her he would “take care of her.” ■ .
Ms. Guillory and Ms. Lopresto persisted in their demand to see the financial records of SBT, and an attorney demand letter was sent to Mr. Broussard by Ms. Lopresto’s husband, attorney Michael Lo-presta. Still Mr. Broussard resisted. Eventually, Mr. Broussard ■ followed through on his threat to remove Ms. Guil-lory and Ms. Lopresto from the Board, reported Mr. Lopresto to the, attorney ethics board, claiming that he had previously represented SBT and his representation of his wife and sister-in-law in a claim against SBT was a conflict of interest.. Mr. Brous-sard then appointed his own children to the Board, voted their proxies, and continued running SBT as he saw fit. He refused to distribute dividends, even though SBT had large net profits, and he continued to refuse to allow access to SBT’s financial records.
Ms. Guillory and Ms. Lopresto then filed a mandamus suit compelling Mr. Brous-sard to furnish the financial records of SBT, and, when he finally did so, they allegedly discovered what they claimed to be excessive compensation and misuse of SBT’s assets. There were allegations that Mr. Broussard built improvements . on jointly owned inherited property and paid many of the expenses of his horse ranch with SBT funds. Those claims were apparently settled and are not at issue here.
The situation had been further exacerbated by Mr. Broussard, as after he had increased his stock ownership in SBT, Mr. Broussard elected to file tax returns as a Subchapter S Corporation, thus making the Shareholders individually liable for 14taxes based on their percent ownership of SBT’s net profits. Allegedly, Mr. Brous-sard had also promised his sisters that he would distribute.sufficient dividends to enable them to pay their pro-rata taxes, and after the demand to see the financial records and mandamus suit was filed, he refused to do so unless they dismissed their claims. Ms. Guillory had to borrow money to pay her pro rata share of the taxes.[1]
When Mr. Broussard continued to refuse to distribute dividends from SBT’s profits and refused to account to SBT for misuse of its funds, Ms. Guillory and Ms. Lopresto filed the subject lawsuit. Ms. Lopresto withdrew from the litigation, but then amended the suit by consent of all parties to be added as a nominal indispensable party. Ms. Guillory proceeded to bring this case to trial as a shareholder’s derivative action seeking to recover as direct result of the alleged breach of fiduciary duty, self-dealing, and corporate, mismanagement by Mr.' Broussard, the majority shareholder, director, and president. Among other allegations, the suit claimed that Mr. Broussard intentionally paid himself excessive compensation and deliberately withheld distributions of profit from the shareholders in order to coerce- dismissal of Ms. Guillory’s law suits.: Ms. Guillory claimed that based on Mr. Brous-sard’s actions, and especially based on his deliberately withholding profit distribu *500 tions'to coerce dismissal of Ms. Guillory’s suits, Mr. Broussard committed a violation of the Louisiana Unfair Trade Practices Act (LUTPÁ) and was liable for damages and attorney’s fees pursuant to ’ La.R.S. 51:1402 et seq.
| f;This case eventually proceeded to bench trial on Ms. Guillory’s claitas, during which Mr. Broussard, under cross-examination in plaintiffs case in chief, admitted that he set his own compensation, admitted removing Ms. Guillory and Ms. Lopresto from the Board, and admitted he did not distribute dividends' in spite of SBT’s increased net;profits. ■ The financial records eventually disclosed the compensation noted above. The evidence also disclosed that while managing SBT, Mr. Broussard was running four additional companies and allegedly spending many of his afternoons at his horse ranch, using SBT funds to make improvements. During thé time period from 2004-2011, Ms. Guillory claimed that she was not aware of the excessive compensation Mr. Broussard was paying himself as he never provided his sisters with financial statements that would show his compehsation until after their mandamus suit was filed.
At the close of plaintiffs evidence, Mr. Broussard moved for. involuntary dismissal pursuant to La.Code Civ.P. art 1672(B), which was granted by the trial court, and affirmed by this majority. The trial judge specifically, and improperly, placed the burden of proving excessive compensation by an alleged self-dealing managing director on the plaintiff, Ms. Guillory, when he held:
Therefore, [I] find that the plaintiff has failed to prove that the compensation paid to Mr. Broussard is excessive. I’ta not saying that — it may he excessive, but the plaintiff failed to prove it and, therefore, I will grant the Motion for Involuntary dismissal regarding the ex-cessiveness of the eompensation[,]
That error of law then interdicted the fact-finding process. Ordinarily, we réview a trial court’s findings of fact using the manifest error standard of review. If the findings are reasonably based on all the evidence, we are not permitted to reverse those findings unless there is no factual support for the findings or unless clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
| (¡However, when a legal error interdicts the fact finding process, we no longer use the manifest error standard of review and, after reviewing the complete record before us, we conduct a de novo review and make our own independent findings. See Evans v. Lungrin, 97-541 (La.2/6/98), 708 So.2d 781.
It is clear from the trial court’s reasons for ‘ruling that he placed the burden of proof squarely on the plaintiff to prove all elements of its claims by a preponderance of the evidence. But In á shareholder’s derivative action, the burden of proof shifts ’to an interested director or corporate officer once a prima facie case of self-dealing is established. Donaldson v. Universal Eng’g of Maplewood, Inc., 606 So.2d 980 (La.App. 3 Cir.1992); Woolley v. CAS Ref. Inc., 94-648 (La.App. 2 Cir, 1/11/95), 651 So.2d 860, writ denied 95-1158 (La.6/16/95), 655 So.2d 881.
I would find that bncé Ms. Guillory proved that Mr. Broussard was the sole manager and decision maker of’ SBT and had sét his own salary and benefits, had removed his sisters from the Board, and had withheld dividends, none of which was contested, the burden then shifted to him to show that he was not being paid excessive compensation and that his actions were in good faith, arms length transactions and was inherently fair to the corporation and the minority shareholders.
*501 In Noe v. Roussel, 310 So.2d 806, 818 (La.1975) (emphasis added.), the Louisiana Supreme Court discussed the following relevant criteria from the United States Supreme Court case of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939):
‘A director is a fiduciary.... Their dealings with the corporation áre subjected to strict scrutiny and where any of their contracts or engagements with the corporation is challenged the 17burden is on the .director not only to prove good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.
The Louisiana Supreme Court in Noe went on to hold that, “We hold, therefore, that an agent who ... otherwise acts in,a fiduciary capacity, bears the burden of establishing that the transaction ,was an arm’s length affair.” Id. at 818-19 (emphasis added).
In Woodstock Enterprises, Inc. v. International Moorings & Marine, Inc., 524 So.2d 1313, 1317 (La.App. 3 Cir.1988), a panel of this court cited Noe in holding that, “An interested director bears the burden of proving his good faith in entering into a contract on behalf of his corporation as well as the inherent fairness of such contract from the ¡standpoint of the corporation.” (Emphasis added.) Further in Donaldson, 606 So.2d 980, 988-89 (La.App. 3 Cir.1992) (emphasis added) (citations omitted) (citing Dunbar v. Williams, 554 So.2d 56 (La.App. 4th Cir.1988)), a panel of our court held:
Louisiana law imposes upon corporate officers and directors a fiduciary duty to the corporation and its shareholders when an officer or director contracts with the corporation. The transaction is subject to close judicial scrutiny to ensure the .no violation of fiduciary duty is involved. ;
[[Image here]]
The person acting in the fiduciary capacity bears the burden of establishing that his transactions were legitimate; By law,"‘the interested director’ must show not only that the action was fair to the corporation, but also that it ’was essentially an ‘arm’s length’ transaction.
As in this case, the court in Donaldson noted, “A review of the lower court’s written reasons for judgment reveals that the trial judge did indeed erroneously place the burden on the plaintiffs rather than the defendant.” Id. at 988 (emphasis | sadded). See also Hirsh v. Cahn Electric Co., Inc., 29,327 (La.App, 2 Cir. 5/9/97), 694 So.2d 636, writ denied, 97-1561 (La.10/3/97), 701 So.2d 200.
I would-note especially that pursuant to the law that was in effect , at the time this case was filed, La.R.S. 12;91(A)[2] provided: “Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective position in good faith[.]” I would submit that as a matter of conscience as well-as a matter of law, that duty is heightened when the only shareholders are one’s own siblings.
The crux-of the majority’s holding-is that -Ms. Guillory failed' to present a “pri-ma facie case'by merely filing a pleading alleging a breach of fiduciary duty to the corporation. For that reason, we do not find that Ms. Guillory’s pleading alone is enough to shift the burden of proof to Mr. Broussard!.]” (Emphasis added.) In spite of this statement, the majority did go *502 on to review the evidence plaintiff had submitted in support of its prima facie case. The error of law persisted because the majority looked at that evidence through the lens of the manifest error rule. Because I would find that the, trial judge and majority failed, to properly shift the burden of proof to Mr. Broussard, this legal error interdicted the fact finding process. Reviewing the evidence, de novo, I would find that Ms. Guillory clearly and, I would submit, overwhelmingly presented a prima facie case, thus shifting the burden to Mr. Broussard.
The trial judge and majority failed to properly shift the burden of proof and credit the unrebutted testimony that Mr. Broussard fixed his own compensation and inténtionally withheld dividends. Plaintiff proved bad faith and self-dealing by 19Mr. Broussard’s own testimony under cross examination, by his e-mails, and by SBT’s records filed in evidence. It Was then Mr. Broussard’s burden to prove-that his compensation was not excessive and his management was not derelict. If Ms. Guillory had the final burden of proving excessive compensation in a shareholder’s derivative action, then, basically, the burden would never be “shifted” at all, in direct contravention of the holdings in Noe, Donaldson, and Woodstock.
Assuming arguendo that the burden did not immediately shift once Ms. Guillory proved bad faith and self-dealing, on de novo review I would find that Ms. Guillory did put on considerable additional evidence to show excessive compensation and bad faith. • Mr. Broussard admitted that when he submitted financial information to a prospective buyer for SBT, he used a yearly salary for a person holding his .position of $250,000 per year, much less than the $1,000,000 per year plus additional benefits that he was paying himself.
Additionally, Mr. Ronald Gagnet, Ms. Guillory’s expert C.P.A., testified that Mr. Broussard’s annual compensation was greatly in excess of that which local companies pay executives similarly situated. He based his opinion on his many years of filing tax returns and providing financial advice to companies in this area. The trial judge found his method was not “reliable” because Mr. Gagnet had failed to offer evidence of what comparable trucking company executives were paid in this area. The main problem with this reasoning is that SBT is a closely held family corporation, not a public' company.. Just where was Mr. Gagnet to find hard’ comparisons of companies’ similarly situated, since none of their financial records, let- alone executive compensation information, were public record? Mr. Gagnet testified, without revealing client confidentiality, that based on his many years of experience handling tax returns and financial planning for companies similarly | Tnsituated, Mr. Broussard’s compensation was excessive. On de novo review, I would find that there is no reasonable basis in the record for the trial judge’s decision to exclude his testimony as “unreliable,” especially in light of the fact that the evidénce was submitted in order to prove a prima facie case of excessive compensation. A prima facie case is defined as, “1. The establishment of a legally required rebuttable presumption. 2. A party’s production of enough evidence to allow the fact finder to infer the fact at issue and rule in a party’s favor.”[3]
In-reviewing the record de novo, I would find that the admissions of Mr. Broussard, as well as the e-mails, and corporate records introduced, clearly established a pri-ma facie case that Mr. Broussard was receiving excessive compensation, was in bad faith and was self-dealing. A fortiori, Mr. *503 Gagnet’s testimony clearly established and buttressed a prima facie case that . Mr. Broussard was being paid excessive compensation.
While the trial judge does have the authority to weigh evidence and assess credibility in a Motion for Involuntary Dismissal, he must do s.o based on the proper placement of the- burden of proof. In this case the burden of proof had shifted to Mr. Broussard. Mr. Broussard had not testified on direct and no evidence had been offered as yet to sustain his burden of proving that his compensation was not excessive, that he did not. misuse company funds, or that he did not improperly withhold dividends to coerce dismissal of Ms. Guillory’s lawsuits. To the contrary, the corporate minutes and e-mails already in evidence clearly establish that Mr. Brous-sard voted his shares to remove his sisters from the Board, install his own children, and then voted their proxies to approve his actions. See Noe, 310 So.2d 806; Woodstock, 524 So.2d 1313; Donaldson, 606 So.2d 980; Wooley, 651 So.2d 860; and Hirsh, 694 So.2d 636.
I would submit that the trial judge committed legal error when he failed to- shift the burden of proof to Mr. Broussard, and that his decision to dismiss the'case on the basis of an involuntary dismissal was erroneous, as was the majority’s ruling affirming the decision using the manifest error rule as its basis.
Louisiana Unfair Trade Practices Act . (LUTPA)
Mr. Broussard has also, been sued under LUTPA for his refusal to distribute profits to shareholders in order to coerce dismissal of the shareholder law suits against him in violation of the La, R.S. 51:1405(A), et seq. The words of LUTPA prohibit “Unfair methods of compensation and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]” La.R.S. 51:1405(A) (emphasis added). Clearly, the words of the statute-.do not just prohibit unfair methods of competition, but also prohibit deceptive acts and practices. Nowhere in the statute -can be found the requirement that these deceptive acts or practices “harm consumers.” In fact, La. R.S. 51:1409(A) specifically gives the right of action to. “any person.” Louisiana Revised Statutes 51:1402(8) defines “person” as “a natural person[.]” Further, in La. R.S. 51:1402(10), “ ‘Trade’ or ‘commerce’ ” is also- liberally defined in the statute as “distribution of any services and any property ... or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.”
In Cheramie Services, Inc. v. Shell Deepwater Prod., Inc., 09-1633 (La.4/23/10), 35 So.3d 1053, a'plurality opinion of the .supreme court, the .court held | lathát the court must look to “the words of the statute.[]” The plurality opinion went on the hold:
The applicable theory of recovery before this court is provided in LUTPA. Louisiana Revised Statutes § 51:1405(A) prohibits any “unfair or deceptive act or practices in the conduct of any trade or commerce” and § 51:1509(A) grants á right of action to “[a]ny person who suffers any ascertainable loss” from a violation of this prohibition. It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute’s prohibition. Dufau v. Creole Engineering, Inc., 465 So.2d 752, 758 (La.App. 5 Cir.), writ denied, 468 So.2d 1207 (La.1985) (In order to recover under LUTPA a plaintiff must prove “some element of fraud, misrepresenta-tibn, deception, or other unethical conduct” on the part of the defendant,).
Id. at 1059.
I would find that the trial judge improperly granted an involuntary dismissal of *504 the LUTPA claim. The trial judge specifically held, “although the evidence ■ does indicate that Mr. Broussard intentionally did not distribute the profits ... there was a valid business reason for not distributing them. Therefore he did not violate .his fiduciary duty.”
As the majority noted, "the trial court then went on to conclude, I submit erroneously, that the definition of “trade and commerce” does not include the distribution or failure to distribute profits by a corporation to its shareholders. The majority affirms, finding no manifest error in the trial courts grant of the defendant’s motion of involuntary dismissal of the LUTPA claim.
. I respectfully disagree and I would find that a fair reading of the statute indicates there is no basis for the court’s ruling that the definition of “trade and commerce” does not include the distribution or failure to distribute profits by a corporation to its shareholders under the circumstances of this case.
I would find on de novo review that at least a prima facie case was proven, that Mr, Broussard was in bad faith when he unilaterally and without his sister’s | ^knowledge or approval increased his executive compensation substantially between 2004 and 2011, as outlined infra, thus depriving them of the normal dividends from the company’s net profits they should have received.
Mr. Broussard then'convinced his sisters to “sell 'him” each fifteen (15%) percent of the company stock they all inherited from their father. He “bought” that stock using their own money as the company paid for the stock as “treasury shares”. When Ms. Guillory'would not withdraw her demand to see the company’s financial records, Mr. Broussard “voted” his majority shares, removed his sisters from the Board, ceased paying director’s'fees, and ceased distributing dividends until after this suit was filed.
Moreover, when he had decided that it would be advantageous to have the company file returns as a sub-chapter S corporation,-he had promised his sisters that he would distribute dividends to enable them to pay their pro-rata share of the company’s taxies on its net profits. When they refused to dismiss their 'claims, he withheld the dividends, forcing Ms. Guillory to borrow money to pay her share of the taxes. He also' ceased' paying his sisters their pro rata share of the rent SBT was paying for use of the building and movables from which SBT was operating, claiming SBT owned the assets.
I would find on de novo review that all of these actions amount to unfair trade practices within the meaning of the law. At the very least, a prima facie case has been established.
114Failure to recognize that plaintiff, Ms. Guillory, presented a prima facie case under LUTPA was an error of law that also interdicted the fact finding process. I would reverse on de novo review. See Cheramie, 35 So.3d 1053 and Lungrin, 708 So.2d 731. I would remand for a new trial on the LUTPA claim as well.[4]
New Trial
The remedy in this case is to order a new trial. I would respectfully find that the majority, erroneously in my view, held that since Ms. Guillory- “intended to appeal only the final judgment on the- merits, we need not address the motion for new trial issue.” The record shows that Ms.- Guillo-ry did in fact appeal the trial court judgment denying the motion for new trial. Not-only did Ms:-Guillory appeal the mo *505 tion for new trial, she also briefed the issue in the trial court. Her briefs and arguments on appeal mirror the arguments presented to the trial court in support of her motion for new trial.
Ms. Guillory did ask on appeal that we reverse and render judgment in her favor as opposed to ordering a new trial. • She claims that Mr. Broussard did not specifically' answer and plead an “affirmative defense” in the trial court that his 'compensation was “set in an arm’s length transaction and fair to all concerned!,]” such that he should now . be precluded from asserting that “affirmative defense.”
I would firid that Mr. Broussard is entitled to present a defense on’ the merits of the claim on remand.1 He answered; denying liability, and under a fair reading of the pleadings, as well as based on the evidence introduced on plaintiff’s case in chief, he is entitled to introduce evidence that his compensation was lawfully approved by the Board, was set in an arm’s length transaction, is fair to the | ^corporation and its minority shareholders, and that his actions" in withholding dividends were in SBT’s best interest and justified.
Since I would find the trial judge was legally in error by failing to properly shift the burden of proof, a new trial should be ordered for the parties on all issues in the interest of justice, to be held in accordance with the procedure outlined in La.Code Civ.P. art. 1978.
Disposition
I would reverse the decision of the trial court granting the motion for involuntary dismissal of Samuel Broussard, Jr., Michelle Cart, Curt Van Brocklin, as Trustee of the SSB 2012 Family Trust No. 1, and Sam Broussard Trucking Company and remand for a new trial on all issues to be held in accordance with the provisions of La.Code Civ.P. art.1978. I would assess all costs of this appeal to Samuel Brous-sard, Jr.

. Louisiana Revised Statutes 12:91 was repealed by Acts 2014, No. 328, § 5, effective Jan. 1,2015.

. BLACK’S LAW DICTIONARY 9th ed. West 2009.

. See related litigation referenced in footnote one.